UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIAS MANUEL CUSTODIO, | |
| Plaintiff, | Case No. 1:21-cv-00351-BLW |
| vs. | **INITIAL REVIEW ORDER BY SCREENING JUDGE** |
| ASHLEY DOWELL, SANDY JONES, LISA BOSTAPH, RICH WILLIS, KAREN NEILL, CORNEY DENNIS, R. DAVID MOORE, MIKE MATTHEWS, JANIE DRESSEN, DIANA CARNELL, PAROLE HEARING OFFICER, and IDAHO COMMISSION OF PARDONS, | |
| Defendants. | |

The prisoner civil rights complaint of Plaintiff Elias Manuel Custodio was conditionally filed by the Clerk of Court, subject to review by the Court to determine whether it should be dismissed under 28 U.S.C. §§ 1915 or 1915A. Plaintiff, an Idaho state prisoner, contests his denial of parole.

Having reviewed the record, the Court enters the following Order permitting Plaintiff to proceed for injunctive relief against certain defendants only on his equal protection claim.

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 1**

## REVIEW OF COMPLAINT

### 1.  Background

Plaintiff asserts that members of the Idaho Commission of Pardons and Parole (ICPP) and its executive director violated his Fourteenth Amendment due process and equal protection rights and his First Amendment rights as a potential parolee. He alleges that the ICPP erred by relying on "falsified controverted police reports" that were discredited at trial and are now 20 years old; by allowing the victim's mother to testify against the release of Plaintiff even though she lied at trial; and by asking all the State's witnesses, including the victim, to lie to the ICPP—all "in retaliation for plaintiff's previous 1983 lawsuit which helped stop T/C prgms in Idaho, also placing Plaintiff's parole hearing behind COP KILLER hearing to bias/retaliate violating Plaintiff's rights." Dkt. 3, p. 3 (verbatim). Plaintiff also alleges that "whites are paroled at faster rate than Hispanics for same crimes." *Id*., p. 6 (verbatim).

Among Plaintiff's damages is "denial of parole." *Id*. He seeks damages and a new parole hearing "without the errors." *Id*.

### 2.  Standard of Law for Review of Complaint

The Court is required to review complaints of prisoner and in forma pauperis litigants to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§1915(e)(2)(B), 1915A.

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 2**

Plaintiff brings his claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

A complaint fails to state a claim for relief under Rule 8 of the Federal Rules of Civil Procedure if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In other words, although Rule 8 "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," but lack a causal link or other element of a civil rights cause of action, the complaint has not stated a claim for relief that is plausible on its face. *Id.* (internal quotation marks omitted).

Certain types of parole claims may be brought as § 1983 claims; others must be asserted in habeas corpus actions. For example, in *Heck v. Humphrey*, 512 U.S. 477, 481 (1994), the United States Supreme Court determined that a prisoner in state custody cannot use a civil rights action to challenge the fact or duration of his confinement. *Id*. at 81-82. In *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), the United States Supreme Court applied *Heck* to a prisoner's challenge to denial of good-time credit, holding that

the claim was not cognizable under § 1983 because the challenge would have necessarily

implied the invalidity of the judgment.

In *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997), the Ninth Circuit extended

the *Balisok* holding to a defendant's challenge that parole officials wrongfully found him

ineligible for parole when they considered false information in his prison file. Therein,

the court reasoned:

> We have no difficulty in concluding that a challenge to
> the procedures used in the denial of parole necessarily
> implicates the validity of the denial of parole, and therefore,
> the prisoner's continuing confinement. Few things implicate
> the validity of continued confinement more directly than the
> allegedly improper denial of parole. This is true whether that
> denial is alleged to be improper based upon procedural
> defects in the parole hearing or upon allegations that parole
> was improperly denied on the merits. Appellant's civil claim
> for damages amounts to a collateral attack on his denial of
> parole and subsequent incarceration. *Heck* does not permit
> this.
>
> The fact that Butterfield seeks money damages rather
> than parole as a remedy does not alter this conclusion... Any
> money damages that would be assessed against defendants in
> this case would necessarily be based upon the harm to
> Appellant in having his parole denied, i.e., damages will
> inevitably be measured by the denial of parole–Butterfield's
> continuing confinement.

*Butterfield*, 120 F.3d at 1024.[1]

---

[1] Similarly, in *Bogovich v. Sandoval*, 189 F.3d 999 (9th Cir. 1999), the United States Court of Appeals for the Ninth Circuit made it clear that prisoners cannot use a civil action like the Americans with Disabilities Act (ADA) to challenge the validity or duration of confinement, but must do so in a habeas corpus action. Only in certain cases will plaintiffs be able to assert a civil rights action that implicates confinement without having first exhausted their state court remedies. In *Bogovich*, the court found that the claims of plaintiffs/appellants did *not* challenge the validity or duration of confinement because they:

After *Balisok* and *Butterfield*, the Supreme Court decided *Wilkinson v. Dotson*, 544 U.S. 74 (2005), clarifying that an inmate may initiate a § 1983 action to seek invalidation of "state procedures used to deny parole eligibility ... and parole suitability," but he may not seek "an injunction ordering his immediate or speedier release into the community." *Id*. at 82. At most, an inmate can seek as a remedy "consideration of a new parole application" or "a new parole hearing," which may or may not result in an actual grant of parole. *Id*. This holding comports with *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973): "When a state prisoner seeks "a determination that he is entitled to immediate release or a speedier release from ... imprisonment, his sole federal remedy is a writ of habeas corpus." The *Dotson* Court further noted that its previous cases, "taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." 544 U.S. at 81-82.

---

[did] not allege that they had been improperly denied parole, and [did] not seek to upset any previous decisions denying parole. Nor would appellants necessarily be entitled to parole or to shorter prison terms if they were successful on the merits of their ADA claim. Rather, appellants contend that, in the future, the Board should not be allowed to discriminate against disabled inmates in its parole decisionmaking process. If appellants are successful on their ADA claim, the Board might be required, at most, to limit its consideration of substance abuse as a parole factor or make other reasonable accommodations, if and when appellants or similar situated persons come before the Board for parole consideration.

189 F.3d at 1003-04.

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 5**

### 3.  Discussion

According to the foregoing law, Plaintiff can pursue his allegations as a civil rights claim without having shown that his parole revocation has been invalidated *only* if success in his case would not implicitly invalidate revocation of his parole. The Court will liberally construe the Complaint as one that does not seek a reversal of his parole denial (which would be barred by *Heck*), but only seeks a new hearing that employs new procedures that include checks and balances to ensure that parole decisions are not being made based on race or nationality factors.

### A. *Claim that ICPP Cannot Rely on Evidence from Criminal Trial*

Plaintiff's Due Process Clause claim is premised on the basis that the ICPP cannot rely on 20-year-old evidence and records from his criminal action to deny parole today. The first part of the analysis of this claim is to determine whether there is a liberty interest in parole in Idaho, based on the following case law.

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law, but a person cannot bring a due process claim unless he demonstrates that he was deprived of one of these protected interests. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 459-60 (1989). There is "no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners." *Swarthout v. Cooke,* 562 U.S. 216, 220 (2011); *see Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987). Therefore, an inmate can bring a procedural due

process challenge to a parole denial decision only when there is a *state-created* liberty interest in parole. *Swarthout*, 562 U.S. at 220.

Federal courts are required to look to decisions of the highest state court to determine whether there is a state-created liberty interest in parole arising from state statutes. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006) ("a State's highest court is the final judicial arbiter of the meaning of state statutes").[2] In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court addressed the liberty interest question. The court relied on the Idaho sentencing statute, I.C. § 19-2513, which uses the nonmandatory words "[t]he offender may be considered for parole or discharge at any time during the indeterminate period of the sentence." The *Banks* Court held that, as a result of the statute's language, in Idaho "parole is not an automatic right or liberty interest." *Id*. at 908.

The *Banks* Court acknowledged the existence of I.C. § 20-223, which governs parole commission decisions and contains the phrase "a parole *shall* be ordered when" (emphasis added). However, the court did not find the statute's "shall" language controlling in the liberty interest analysis. Rather, the Idaho Supreme Court relied on I.C. § 19-2513, which governs sentencing. That statute does not contain mandatory language,

---

[2] *Sass* was overruled on other grounds by *Hayward v. Marshall*, 603 F.3d. 546 (9th Cir. 2010) (en banc) (any right to release on parole arose from state law, and did not arise from federal constitution), which itself was overruled by implication in *Swarthout v. Cooke*, 562 U.S. 216 (2011) ("No opinion of ours supports converting California's 'some evidence' rule into a substantive federal requirement. The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due-process protection of that interest are those set forth in *Greenholtz* [*v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979).]").

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 7**

but it instead states that "[t]he offender *may* be considered for parole or discharged at any time during the indeterminate part of the sentence."

The *Banks* decision forecloses Plaintiff's ability to bring a due process claim in a federal civil rights action. Therefore, unless the Idaho Supreme Court reconsiders its decision that there is no liberty interest arising from the sentencing and parole statutes, the federal courts are bound by the Idaho Supreme Court's interpretation.

Based upon the United States Supreme Court's strong language in *Swarthout v. Cooke*, no federal due process interest in parole-related issues is found in the United States Constitution, and a right to federal review of a due process claim can be found only where a state-created liberty interest exists. No such interest exists in Idaho. Therefore, Plaintiff has failed to state a federal claim upon which relief can be granted on a Fourteenth Amendment due process theory.

Even if Plaintiff did have a liberty interest, such as in California, his claim would be subject to dismissal, because the due process he did receive meets the minimal federal standard set forth in *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 12 (1979). In *Cooke*, the Court explained the limited parameters of federal court review under the due process umbrella:

> When, however, a State creates a liberty interest, the Due Process Clause requires fair procedures for its vindication— and federal courts will review the application of those constitutionally required procedures. In the context of parole, we have held that the procedures required are minimal. In *Greenholtz*, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 8**

a statement of the reasons why parole was denied. "The Constitution," we held, "does not require more." Cooke and Clay received at least this amount of process: They were allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied.

That should have been the beginning and the end of the federal habeas courts' inquiry into whether Cooke and Clay received due process... The liberty interest at issue here is the interest in receiving parole when the California standards for parole have been met, and the minimum procedures adequate for due process protection of that interest are those set forth in *Greenholtz. See Hayward v. Marshall*, 603 F.3d 546, 559 (C.A.9 2010) (en banc). *Greenholtz* did not inquire into whether the constitutionally requisite procedures provided by Nebraska produced the result that the evidence required; a fortiori it is no federal concern here whether California's "some evidence" rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied.

*Id*., 562 U.S. at 219–21 (internal citations omitted).

There is no case law that supports a claim that a parole commission cannot use evidence and records from the prisoner's past criminal trial as part of the "some evidence" standard. Plaintiff's due process protection was his ability to assert at the parole hearing that the evidence and reports relied upon were outdated and not credible and that the witnesses were biased and untruthful.

It may be a small consolation to Plaintiff to know that he is not alone in his position on what might constitute "fairness" in the parole context. Prior to issuance of the cases relied upon in this Order, courts had pondered whether there might be an instance of parole denial based on past records alone that was so extreme that it would violate due

process. In *Biggs v. Terhune*, 334 F.3d 910 (9th Cir. 2003), the court pondered:

> We must be ever cognizant that "[d]ue [p]rocess is not a mechanical instrument. It is not a yardstick. It is a process. It is a delicate process of adjustment inescapably involving the exercise of judgment by those whom the Constitution entrusted with the unfolding of the process." *Lankford v. Idaho*, 500 U.S. 110, 121, 111 S.Ct. 1723, 114 L.Ed.2d 173 (1991) (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 163, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation.
>
> Because the Board's decision was supported by some evidence, we AFFIRM.

*Id*. at 916–17 (9th Cir. 2003).

*Biggs* and its musings of fairness now lie under a deep pile of overrulings. This Court is constrained to follow the current law as set forth by the Ninth Circuit Court of Appeals and the United States Supreme Court. *Cooke* clearly bars Plaintiff's due process claims. Therefore, it is subject to dismissal for failure to state a claim upon which relief can be granted, and alternatively subject to denial on the merits.

### B. Retaliation Claims

Plaintiff has baldly asserted that the ICPP members and executive director denied him parole because they were angry that he had brought a 2013 lawsuit challenging the therapeutic community program that the IDOC used for parole preparation. However, Plaintiff has provided no factual allegations whatsoever that show this is true. This claim fails for lack of a causal link between the 2013 lawsuit and the recent denial of parole.

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 10**

Plaintiff is free to file an amendment after discovery if he finds additional allegations based in fact. A First Amendment retaliation claim must allege the following: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, ... that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

The timing of an official's action can constitute circumstantial evidence of retaliation, but there generally must be something more than simply timing to support an inference of retaliatory intent. *See Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995). Retaliation is not established simply by showing adverse activity by the defendant *after* protected speech; the plaintiff must show a nexus between the two. *See Huskey v. City of San Jose*, 204 F.3d 893, 899 (9th Cir. 2000) (stating that a retaliation claim cannot rest on "the logical fallacy of *post hoc, ergo propter hoc*, literally, 'after this, therefore because of this'").

### C.  Equal Protection Claim

Plaintiff also argues that the ICPP paroles a higher ratio of white individuals than Hispanic individuals. Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin. *See, e.g., City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 440 (1985).

In *Skinner v. State of Oklahoma ex rel. Williamson*, 316 U.S. 535 (1942), the United States Supreme Court held that the Equal Protection Clause is violated when "the law lays an unequal hand on those who have committed intrinsically the same quality of offense." *Id*. at 540-41. Plaintiff has alleged that he is Hispanic and is similarly situated to two white individuals who had similar murder convictions but who were paroled quicker than he was. Plaintiff, who was convicted of two murders, asserts that:

> One inmate Claude Dallas even killed two game wardens, escaped from custody and is one of many other inmates of Caucasian persuasion paroled quicker.
>
> Another inmate Caucasian slew Senator Brady's son, and both victim and slayer were Mormon, of affluent families and at first parole hearing after 15 years was paroled. White/Caucasian favoritism.

Dkt. 3-3, p. 24 (verbatim). In contrast, Plaintiff alleges, he has been held 7.5 years past his first parole eligibility date. *Id*.

Plaintiff has produced the affidavits of two other inmates. These affidavits do not show that these inmates were similarly situated to white inmates who were paroled, but that information is not readily available to prisoners. Luis Mendoza states that he had two Disciplinary Offense Reports (DORs) on his prison record, but some white inmates had more DORs on their record and yet were paroled. Dkt. 13, pp. 1-2. Zachary Raymond, a Native American, says that he was on a rider (supervised release in lieu of prison) but that was revoked because he had a physical altercation. Dkt. 14, pp. 1-2. He then was denied parole several times. He alleges that other white inmates were paroled sooner than he was. *See id*.

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 12**

Plaintiff will be permitted to proceed on his equal protection claim, to the extent that he is challenging a lack of evidence-based procedures to act as checks and balances to help ensure that parole decisions are not based on race or nationality.

### D.  Immunity against Claims for Damages

ICPP members are immune from suit for monetary damages in their individual capacities under the doctrine of quasi-judicial immunity. The law is well-established that "parole board officials ... are entitled to absolute quasi-judicial immunity for decisions 'to grant, deny, or revoke parole' because these tasks are 'functionally comparable' to tasks performed by judges." *Swift v. California*, 384 F.3d 1184, 1189 (9th Cir.2004) (quoting *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir.1981)). Accordingly, ICPP members and the executive director are immune from suit for damages. These claims are subject to dismissal with prejudice.

Plaintiff asserts that the parole officer is not entitled to quasi-judicial immunity for relying on false information in preparing a parole recommendation for the ICPP to review. The federal courts have generally used a functional approach when determining if a state actor is entitled to absolute or qualified immunity from section 1983 liability. Parole officers preparing reports for parole commissions are serving a very different function from those supervising parolees. In a case applicable by analogy, *Demoran v. Witt*, 781 F.2d 155, 157-58 (9th Cir. 1985), the court held that probation officers preparing presentence reports for state court judges are entitled to absolute immunity from suit for damages under § 1983 because they "serve a function integral to the

independent judicial process. Like parole board members, they act as an arm of the sentencing judge." *Id*. at 157.

Regarding the limits of this immunity, the Ninth Circuit stated: "Absolute immunity fails to attach to judicial officers only when they act clearly and completely outside the scope of their jurisdiction. Allegations of malice or bad faith in the execution of the officer's duties are insufficient to sustain the complaint when the officer possesses absolute immunity." *Id*. at 158. No such allegations are present here. Therefore, Plaintiff may not proceed against these defendants for monetary damages.

### E.  Defendant ICPP

Plaintiff sues the "Idaho Department of Pardons and Parole," which the Court construes as the ICPP. He cannot proceed against this defendant. The Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state or a state entity, absent a waiver of sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890). The Supreme Court has consistently applied the Eleventh Amendment's jurisdictional bar to states and state entities "regardless of the nature of the relief sought." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). All claims against this defendant will be dismissed from this action.

# ORDER

**IT IS ORDERED:**

1.   Plaintiff may proceed on the Fourteenth Amendment equal protection claim
     against Ashley Dowell, Sandy Jones, Lisa Bostaph, Rich Willis, Karen
     Neill, Corney Dennis, R. David Moore, Mike Matthews, Janie Dressen,
     Diana Carnell, and John/Jane Doe Parole Hearing Officer. All other claims
     against all other Defendants are DISMISSED, and all other Defendants are
     TERMINATED as parties to this action. If Plaintiff later discovers facts
     sufficient to support a claim that has been dismissed, Plaintiff may move to
     amend the complaint to assert such claims.[3]

2.   Defendants will be allowed to waive service of summons by executing, or
     having their counsel execute, the Waiver of Service of Summons as
     provided by Fed. R. Civ. P. 4(d) and returning it to the Court within 30
     days. If Defendants choose to return the Waiver of Service of Summons,
     the answer or pre-answer motion will be due in accordance with Rule
     12(a)(1)(A)(ii). Accordingly, the Clerk of Court will forward a copy of the
     Complaint (Dkt. 3) with exhibits, a copy of this Order, and a Waiver of

---

[3] Any amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon or
incorporate by reference prior pleadings. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether
filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed
amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth v. Humana, Inc.*,
114 F.3d 1467, 1474 (9th Cir. 1997) ("[An] amended complaint supersedes the original, the latter being treated
thereafter as non-existent."), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th
Cir. 2012) (en banc); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1990)
(holding that the district court erred by entering judgment against a party named in the initial complaint, but not in
the amended complaint).

Service of Summons to the following counsel via the ECF system:

**Mary Karin Magnelli**, Deputy Attorney General for the State of Idaho, Idaho Department of Corrections, on behalf of Defendants.

3.      Should any entity determine that the individuals for whom counsel for the entity was served with a waiver are not, in fact, its employees or former employees, or that its attorney will not be appearing for the entity or for particular former employees, it should file a notice within the CM/ECF system, with a copy mailed to Plaintiff, indicating which individuals for whom service will not be waived.

4.      If Plaintiff receives a notice from Defendants indicating that service will not be waived for an entity or certain individuals, Plaintiff will have an additional 90 days from the date of such notice to file a notice of physical service addresses of the remaining Defendants, or claims against them will be dismissed without prejudice without further notice.

5.      The parties must follow the deadlines and guidelines in the Standard Disclosure and Discovery Order for Pro Se Prisoner Civil Rights Cases, issued with this Order.

6.      Any amended pleadings must be submitted, along with a motion to amend, within 150 days after entry of this Order.

7.      Dispositive motions must be filed no later than 300 days after entry

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 16**

of this Order.

8.      Each party must ensure that all documents filed with the Court are

simultaneously served upon the opposing party (through counsel if

the party has counsel) by first-class mail or via the CM/ECF system,

pursuant to Federal Rule of Civil Procedure 5. Each party must sign

and attach a proper mailing certificate to each document filed with

the court, showing the manner of service, date of service, address of

service, and name of person upon whom service was made.

9.      The Court will not consider ex parte requests unless a motion may

be heard ex parte according to the rules and the motion is clearly

identified as requesting an ex parte order, pursuant to Local Rule of

Civil Practice before the United States District Court for the District

of Idaho 7.2. ("Ex parte" means that a party has provided a

document to the court, but that the party did not provide a copy of

the document to the other party to the litigation.)

10.     All Court filings requesting relief or requesting that the Court make

a ruling or take an action of any kind must be in the form of a

pleading or motion, with an appropriate caption designating the

name of the pleading or motion, served on all parties to the

litigation, pursuant to Federal Rule of Civil Procedure 7, 10 and 11,

and Local Rules of Civil Practice before the United States District

**INITIAL REVIEW ORDER BY SCREENING JUDGE- 17**

Court for the District of Idaho 5.1 and 7.1. The Court will not consider requests made in the form of letters.

11.    Pursuant to General Order 324, this action is hereby returned to the Clerk of Court for random civil case assignment to a presiding judge, on the proportionate basis previously determined by the District Judges, having given due consideration to the existing caseload.

12.    The Clerk of Court shall send notice to the Pro Bono Coordinator to contact the University of Idaho College of Law to determine whether its faculty and students are willing to act as stand-by counsel for Plaintiff to assist him in discovery and analysis of the discovery or to represent Plaintiff.

DATED: August 27, 2022

B. Lynn Winmill
U.S. District Court Judge